On Rehearing.
O’NIELL, J.
[10] In the appellant’s application for rehearing, our attention is directed to a plea or defense which, although made in the district court, was not urged in the arguments before this court nor in the briefs fil *55 ed on behalf of the appellant. The question is whether the plaintiff has a right or cause of action to recover this land from the defendant, on the allegations that it “is now in the possession of, assessed to and claimed by” the defendant; and that it belongs to the state of Louisiana, having been reserved by certain acts of Congress for the support of the public schools within the township in which this sixteenth section is situated. The township is situated partly, in the parish of Orleans and partly in the parish of Jefferson.
In the case of the Board of School Directors of Concordia Parish v. Albert G. Ober, 32 La. Ann. 417, the plaintiff sued to recover a sixteenth section in a township that was entirely embraced within the parish. The defendant excelled to the capacity of the plaintiff to sue for the revendication of the land. His exception was overruled by the district court, judgment was rendered against him on the merits, and, on appeal, the judgment was reversed on the exception. From the opinion of the then Chief Justice, as the organ of the court, we quote:
. “Can the board of school directors of any parish represent the state in a like case without her authority? The plaintiff cites School Directors v. Anderson, 28 La. Ann. 739, as conclusive ; but it is against him. That suit was on the part of the board for Carroll parish, and the court maintained the right on the ground that legislative authority had been expressly given, by a law on the subject which was restricted to Carroll parish. See Acts 1861, p. 93, though we are inclined to think, if the language of that act had been' scrutinized, it would have been found deficient for that purpose. The plaintiff refers us to the act of 1877 for authority (Sess. Acts, p. 28), which created the parish boards of directors. The fourth section enumerates the powers and duties of these boards with painful minuteness and exhaustive recitation, and in no one of its involved and elongated sentences is this power conferred, or any other analogous to it. So also we are referred to section 7 of the act of 1874; but this merely authorizes the superintendent of public education to appoint a lawyer to examine the notes given for the purchase of school lands, and to recover lands improperly held and revenues diverted. Sess. Acts 1874, p. 216. But when lawyers are employed, they must bring suit properly, in the legal way, and in the name of whoever is capable of suing for the land.
“The title to this land has never been in the parish board of school directors. The title was in the state under the donation of the general government, and she held it for a specific purpose, with authority to sell the lands, and a mandate to hold the proceeds and invest them for the benefit of the schools. No doubt, she could confer authority on the parish boards oi directors to sue in her stead; but she has not done it. On the contrary, the state has seemed very tenacious of this power, and we think rightly, considering the position of trustee in which she stands to this fund. Never has she by a general act given the parish boards the power to sue in such case in their names, and the exception was therefore well taken.”
The foregoing opinion was referred to approvingly in a very recent case, Board of Directors of the Public Schools of Caldwell Parish v. Louisiana Central Lumber Company et al., 136 La. 337, 67 South. 23.
Section 72 of the Act No. 214 of 1902, p. 425, and sections 70 and 71 of the Act No. 134 of 1912, pp. 482 and 483, creating the board of Directors of the public schools of the parish of Orleans as a body politic, with general power to sue and be sued, do not contain any provision that can be construed as giving the board authority to sue for the sixteenth sections belonging to the state. In this respect, the law is as it was when the decision was rendered in the case of the Board of School Directors of Concordia Parish v. Ober, cited above.
On the day that this case was argued on rehearing, the district attorney for the parish of Orleans filed a petition, alleging that he was thoroughly conversant with these proceedings and desired to inform the court that this suit had his approval.
We assume that the district attorney made his appearance and gave his approval to the plaintiff’s suit because of the Act No. 158 of 1910, which was enacted after the present suit was filed.
The first section of this statute of 1910 provides:
“That the several school boards of the various parishes of this state be and they are hereby authorized and empowered to contract with and employ on the part of the state of Louisiana, at *57 torneys at law, to recover for the state, damages for trespass to the sixteenth _ section known as school lands the title to which is still in the state, each of said boards to have authority, to make said contracts for the lands situated in its own parish and no others; and the several school boards shall also have authority to sue for and recover the sixteenth section known as school lands.”
The second section of the statute provides that:
“The attorney or attorneys thus employed shall work in conjunction with the district attorney for the parish in which the land is situated ;” that the compensation of the district attorney shall be the same as heretofore fixed by law, and that the compensation of the other attorney or attorneys shall be fixed by the board employing him or them, not to exceed 25 per cent, of the amount recovered, and to be contingent upon the attorneys’ success.
The third section of the statute provides that:
“Suit in all such cases shall be brought in the name of the state of Louisiana, and the attorneys employed as aforesaid, shall sue for the value of all timber out and remove from any such lands, as well as any and all other legal damages caused by any such trespass.”
The fourth section provides that the authority given by this act shall apply to all sixteenth sections “to which the state has never legally parted with the title” and that the suits therein authorized may be brought against those who claim the right to cut and remove timber from any such lands under color of title.
The fifth section, being the last except the repealing clause, of the statute provides:
“That each and every amount recovered for the state as herein provided shall, after deducting and paying the attorneys’ fees as herein provided, and all other lawful costs and charges, be paid into the state treasury, to be kept on the books of the auditor and treasurer, to the credit of the township in which the land is situated, in the same manner as now provided by law for the proceeds of the sale of such sixteenth sections.”
Hence it appears that, since the present suit was filed, the state has by the Act No. 158 of 1910, given to the parish boards of school directors authority to employ attorneys and to sue for and recover the sixteenth sections to which the. state has not legally parted with its title, and to recover damages for trespass on sixteenth sections. But the Legislature was careful to provide that the attorneys are to be employed on the part of the state of Louisiana; that damages for trespass on the sixteenth sections, the title to which is still in the state, are to be recovered for the state; that the suit, in all such cases, shall be brought in the name of the state of Louisiana; and that whatever sums are recovered in such suits shall be paid into the state treasury, to be credited by the auditor and treasurer to the township in which the land is situated, in the same manner as theretofore provided by law for the proceeds of the sale of sixteenth sections.
The plaintiff had no authority or right of action to sue to recover a school section or sixteenth section of land when this suit was filed, that is, before the passage of the act of 1910; and, under the terms of that statute, the plaintiff has authority now to bring the suit only in the name of the state of Louisiana.
The prayer of the plaintiff’s petition is:
“That said fractional section 16, in township 12 south, range 11 east, * * * be decreed reserved and set aside for the support of the public schools within said township, and that the possession, custody, and control be decreed to be in the board of directors of the public schools of the parish of Orleans, and that said board of directors of the public schools of the parish of Orleans be put into possession and control of said fractional section 16, and that the said New Orleans Land Company, be ousted from their possession of said fractional section 16 and be decreed to have no title or right to same whatever.”
In the judgment appealed from, the district court granted the relief prayed for by the plaintiff, in precisely the same language that was used in the prayer of the petition. And, in the next following paragraph of the judgment, the court proceeded to render judgment in favor of the state of Louisiana, viz.:
*59 “It is further ordered, adjudged, and decreed that the state of Louisiana is the owner of said section 16, township 12 south, range 11 east, * * * in perfect ownership, for school purposes.”
Before answering the petition, the defendant filed the demurrer or exception of no cause of action, which was referred to the merits and was, although not expressly referred to, disposed of by the judgment on the merits. We are of the opinion that the demurrer or exception should have prevailed, and that the plaintiff’s suit should have been dismissed.
For the reasons assigned, the judgment rendered by this court on the 12th of April, 1915, affirming the judgment appealed from, is annulled; and it is now ordered, adjudged, and decreed .that the judgment appealed from be reversed, and that the plaintiff’s suit be dismissed at its cost in both courts.